### UNITED STATES v. HOSTEEN TSE-KESI et al.

### Civ. No. 1803.

United States District Court, D. Utah, Central Division.

Oct. 31, 1950.

O. K. Clay, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff.

Knox Patterson, Salt Lake City, Utah, for defendants.

RITTER, District Judge.

This is a bill to enjoin Navajo Indians from trespassing, grazing and feeding livestock upon lands in San Juan County, Utah, situated north of the San Juan River. In about the year 1933 the United States cut out a small tract of land north of the San Juan River known as the Aneth Extension and attached it to the Navajo Indian Reservation. The Indians who are defendants in this proceeding occupy lands outside of the Reservation and outside of the Aneth Extension. It is claimed that they constitute an independent band of Navajos who have occupied a large area of land in southeastern Utah for a time beyond the memory of man, but in particular since February 1, 1848, the date of the Treaty of Guadelupe Hidalgo between Mexico and the United States, in which it is claimed the property rights of these Indians were affirmed and guaranteed. It is claimed these Indians have aboriginal and ancestral rights of use and occupation to the lands in question, and have occupied the same themselves or through their ancestors for homes for their families and fields for cultivation and for grazing of their herds.

The United States, plaintiff in this proceeding, petitions the Court to enjoin the Indians from occupying the premises which for some years have been their homes and grazing grounds. What the government is asking the Court to do, in short, is to force the Indians to leave their homes and fields and grazing grounds. But the Court has no authority to allot to the Indians any other place to live, on or off the Reservation. In reality, the government is asking the Court to order these Indians to become in effect homeless Nomads.

It appearing that on July 12, 1950 the United States Attorney, on behalf of the plaintiff filed his Motion for Summary Judgment, Motion to Strike and Motion to Dismiss Cross Complaint and Counterclaim.

And on August 23, 1950 the case came on for hearing on Motion for Summary Judgment. The Court heard arguments of counsel and denied the Motion. The basis for the denial was that there appeared to be issues of fact which were not concluded by the documents on file or by the admissions of counsel herein.

And on the 23rd day of August, 1950 the Court heard further arguments of counsel upon plaintiff's Motion to Dismiss the defendant's Cross Complaint and Counterclaim for money damages. And it was ordered that the Cross Complaint and Counterclaim be and the same were dismissed. The basis for the dismissal of the

defendant's Cross Complaint and Counterclaim was that a Federal District Court is not the proper forum in which to seek money damages upon an Indian claim against the United States. That such claims must be presented either to the Indian Claims Commission or to the Court of Claims of the United States.

And on October 9, 1950 defendants filed their Amended Answer, Affirmative Defense and Cross Complaint.

And on October 12, 1950 plaintiff filed its Motion for Summary Judgment, Motion to Strike and Dismiss the Amended Affirmative Defense and Cross Complaint of the defendants.

The matter coming on for hearing on October 14, 1950 after argument of counsel, the Court ordered the defendants Amended Affirmative Defense and Cross Complaint stricken and denied plaintiff's Motion for Summary Judgment.

And on the 14th day of October, 1950 the Court, after hearing argument of counsel, dismissed plaintiff's Complaint, which prays that said defendants and each of them be restrained and enjoined from trespassing, grazing, and feeding of livestock upon the land described.

The Court is of the opinion that if a trial were had, evidence taken, and all of the facts and circumstances established as the government contends, the Court would be confronted with the same fundamental questions and would be constrained to deny injunctive relief.

■ The basis for the Court's refusal to grant the injunction and for the Court's dismissal of the Complaint is that no Chancellor in the exercise of his discretion under all of the facts and circumstances of this case should enjoin the Indians from occupying the lands and premises which constitute their homes thereby forcing them to move therefrom. The Court has no means of compelling obedience to such an order, it being impracticable to send down the numbers of United States Marshals necessary to patrol the territory in San Juan County, Utah, to keep the Indians off of it. Moreover, the Court has no power to allot other lands or territories to the Indians as a place to which they can be removed.

■ The proper authority to take care of the Indians, allot them lands on the Reservation and see to it that they stay there is the United States Department of Interior, Commissioner of Indian Affairs acting under the Secretary of the Interior of the United States. The Indians are wards of the government. The Commissioner of Indian Affairs can provide lands upon which they may live and has the means to compel them to stay there. Even were it possible to send a sufficiently large force of United States Marshals to drive the Indians off the San Juan County lands, this Court has no means whatever of providing the Indians with another place to stay.

If the Commissioner of Indian Affairs acting under the Secretary of the Interior, and if the Bureau of Land Management acting under the Secretary of the Interior have been unable to solve the conflict between the Indians living in San Juan County, Utah, and the livestock people who have Taylor Grazing permits, where Congress has invested both of those authorities with the power and the administrative machinery adequate to the purpose, how can a United States District Court resolve the problem by driving the Indians off of the land they have for considerable lengths of time occupied with no provision whatever for another place on which they can live with their families and livestock? The Court should not under those circumstances grant an injunction. To do so would not be a sound exercise of the Chancellor's discretion.

As a matter of fact, it is the judgment of this Court that the plaintiffs and defendants have not exhausted their administrative remedies.

From the foregoing it is hereby ordered that the plaintiff's Complaint be and the same hereby is dismissed; and that the defendant's Affirmative Defense and Gross Complaint be and the same hereby are dismissed.

Each party hereto duly excepted to all actions of the Court and their exceptions are settled and allowed.